
UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MICHAEL CASCIO | § | CIVIL ACTION NO. 02-2115 |
| VERSUS | § | SECTION "L" JUDGE ELDON FALLON |
| TMA MARINE, INC., ET AL. | § | MAG (5) MAGISTRATE CHASEZ |

**REPLY MEMORANDUM TO FLAG CONTAINER'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

MAY IT PLEASE THE COURT:

Michael Cascio, plaintiff herein, respectfully submits the following reply memorandum in response to Flag's memorandum in opposition to plaintiff's motion for leave to file first amended and supplemental complaint:

**GOOD CAUSE EXISTS, DUE DILIGENCE WAS EXERCISED AND FLAG CANNOT CLAIM PREJUDICE BY VIRTUE OF ITS OWNER'S DECEPTION**

Plaintiff has good cause to amend his complaint. On January 14, 2003, Peter Franchini, the corporate representative and owner of Flag Container, testified unequivocally that he was aware that an uncovered manhole was a dangerous safety hazard and for that reason the bulkhead's manhole was never left uncovered.
-1-

(Franchini pp. 36-37). At that time, and until July 15, 2003, plaintiff was unaware that Mr. Franchini had deliberately concealed the true facts upon which a punitive claim could have been brought. True, Mr. Mravlja was identified as a witness as of February 17, 2003. However, counsel for Flag, who had a undisclosed statement from Mr. Mravlja, stated that Mr. Mravlja's knowledge was limited to having called an ambulance for Mr. Cascio because he had not seen the accident. It was also possible that Mr. Mravlja had information relating to whether or not the M/V THAD A had permission to moor the scow barge at the bulkhead at the time in question. This factual issue had much more relevance to the claims between the defendants rather than between plaintiff and Flag. Certainly, nothing in the anticipated testimony of Brian Mravlja raised any concerns that the plaintiff would have to amend his suit in light of the testimony. Additionally, Mravlja no longer was employed by Flag and again, counsel for Flag (as well as counsel for TMA and Great Lakes) informed plaintiff's counsel that Mravlja was difficult to contact and was in all likelihood actively avoiding phone calls and attempts to be reached. Nevertheless, counsel for all parties met at a discovery scheduling conference on April 10, 2003 for the explicit purpose of scheduling the numerous (over thirty) outstanding discovery and perpetuation depositions to be taken. The tentative date of June 4, 2003 was selected by agreement of all parties for the New York depositions of Stephan Brogna (another witness germane to the fact dispute between Flag and Great Lakes regarding permission for use of the bulkhead) and Brian Mravlja. These depositions were then postponed by agreement of all parties in light of the trial's continuance and changes in

the schedules of counsel. Again, by agreement, the depositions of Brogna and Mravlja were re-scheduled as soon as possible under the circumstances which was July 15, 2003. As stated above, there was no particular urgency because it was not anticipated by plaintiff's counsel that Mravlja's testimony would have any bearing on Flag's culpability. Since the depositions were in New York, professional courtesy regarding the schedules of all involved and the logistics of finding and subpoenaing a hard to find, unwilling witness, much more so than any lack of diligence on the part of plaintiff, was the reason that Mravlja and Brogna were deposed on July 15, 2003.

Once Mravlja testified and it became clear that Franchini deliberately concealed facts arguably arising to gross negligence, plaintiff began to consider his options under New York law, which like most states other than Louisiana allow for punitive damages for gross negligence. However, once George Callahan was located (also by Mralvja's testimony) and in an interview corroborated Mravlja's testimony as to the great frequency of the manhole being uncovered and long periods of time that the hole was left unattended and open, plaintiff had no option but to amend and supplement his complaint for punitive damages under New York law. After July 15, 2003, the liability picture changed as follows: instead of an unknown and unidentifiable force uncovering a hole that is never uncovered between 5:00 p.m. and the time of the accident (@6:00 p.m.), we now know that it was routine (but reckless and indifferent) policy at Flag to leave this hole uncovered and open all the time, the cover not being placed back because of the slight inconvenience to Flag and the laziness of its employees and directors. Further, Flag is not an unknowing innocent, Franchini testified that he

-3-

consciously appreciated the safety hazard of an open hole in a work area. This in a nutshell is the difference between arguable negligence and arguable gross negligence, hence the need for plaintiff to amend his complaint.

To the extent that Flag is prejudiced (which plaintiff argues it cannot be), it is by its own hand. First, Peter Franchini, the owner and president of Flag, deliberately concealed and deceived plaintiff's counsel regarding Flag's policy as to that manhole. Plaintiff had no reason to doubt the veracity of Franchini's sworn testimony until July 15, 2003. Plaintiff was still hesitant when it was to be a swearing match between Franchini and Mravlja, but now in light of another disinterested witness' statements corroborating Mravlja and contradicting Franchini, plaintiff is compelled to amend to seek punitive damages. Plaintiff should not be punished and Flag should not be rewarded for giving untrue testimony. Second, Flag should have been well aware of Mravlja's testimony as he was a long-time employee of Flag (and thus under its control) and counsel for Flag had obtained a statement from Mravlja around the date of the accident. Both points in this regard equate to the same thing – Flag is not prejudiced because it has been aware (unlike plaintiff) of the true and accurate facts surrounding the gross negligence of Flag Container since the accident date. Flag's owner then deliberately attempted to cover up Flag's gross negligence by (1) claiming that the M/V Thad A never had permission to dock at the bulkhead (contradicted by Great Lake witnesses Goethius and Brogna) and (2) claiming that the manhole was never left uncovered and that he had walked the yard that evening and the hole was covered.

## OUR FACTS SUPPORT A GOOD FAITH CLAIM FOR PUNITIVE DAMAGES

The standard for punitive damages under New York law is "reckless disregard for the safety of others." *Maltese v. Westinghouse Electric Corp.*, 655 N.Y.S. 2d. 855 (Ct. App. N.Y. 1997). The Court adopted a gross negligence standard, requiring that "the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow." *Id* quoting Prosser and Keaton, Torts §34 at 213 (5th ed).

As the defendant admits, "the burden of proof concerning an award of punitive damages is *preponderance* of the evidence, not clear and convincing or some other higher evidentiary standard." *Matter of Seventh Jud. District Asbestos Litigation*, 593 N.Y.S. 2d 685 (N.Y. App. Div. 4th Dept. 1993). Defendant points to the importance of an element of "studied indifference" and its role in the awarding of punitive damages. *State Farm Mutual Automobile Ins. Co. v. Campbell*, 123 S.Ct. 1513, 1520 (2003). Facts abound regarding the "studied indifference" of Franchini. Franchini admitted that an open hole was a safety hazard and for that very reason the hole should be always covered. (Franchini p.36-37) It is clear that Franchini "consciously appreciated the risk". *Heller v. Provenzano*, 303 A.D. 2d. 20 (N.Y. App. Div. 2003).

Franchini admitted that an open hole was a safety hazard and that it should not be left open. Mralvja testified that despite Franchini's sworn testimony, the hole was more often than not left uncovered largely as a result of laziness of workers to place the cover back. Finally, George Callahan corroborates Mravlja's testimony that the hole

was usually left uncovered. These are facts which if viewed in the light most favorable to the plaintiff could result in an award of punitive damages under the applicable New York law. Certainly, plaintiff's claim for punitive damages is not "futile" since it would withstand a motion to dismiss. As such, plaintiff's amendment should be allowed.

### JUDICIAL ECONOMY FAVORS PLAINTIFF'S MOTION

The New York statue of limitations for bringing a claim for punitive damages in a personal injury action is three years. Plaintiff's accident was February 26, 2002. If plaintiff's motion to amend is denied, then plaintiff will file a claim for punitive damages against Flag in New York.[1] However, because of the duplication of effort this will be a waste of the parties resources as well as of judicial resources of the Eastern District of Louisiana and Southern District of New York. Judicial economy favors plaintiff's motion which will allow plaintiff's claims to be resolved at one time in one forum.

Respectfully submitted:

STRAUSS & KING

BERNEY L. STRAUSS, TA (#12527)
RHETT E. KING (#23811)
729 Camp Street
New Orleans, Louisiana 70130-3701
504. 523-0033 (telephone)
504. 523-0109 (facsimile)

ATTORNEYS FOR PLAINTIFF

---

[1] Undersigned counsel is licensed member of the New York bar.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been placed in the U.S. Mail, properly addressed and postage prepaid, by facsimile transmission, or by hand delivery to all counsel of record on this 3rd day of Sept., 2003.